IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 2:08-CR-1153-DCN |
| vs. | ) | |
| | ) | |
| JULIUS NESBITT, | ) | **ORDER & OPINION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on defendant's motion to suppress guns and drugs seized pursuant to a search warrant. For the reasons set forth below, the court denies defendant's motion.

## I. BACKGROUND

This case arises from defendant's arrest and prosecution for conspiracy to possess with intent to distribute oxycodone, possession with intent to distribute oxycodone, possession of firearms in furtherance of a drug trafficking crime, felon in possession of firearms, and willfully causing the Coast Guard to attempt to save a life and property when no help was needed.[1] On July 26, 2007, police from the Georgetown County Sheriff's Office Organized Crime Bureau (OCB) used a confidential informant to purchase two tablets of Oxycontin from defendant at his residence at 9221 Gapway Rd.,

---

[1] Apparently, after his arrest for the gun and drug charges, defendant failed to appear for a state court date in November 2007. Instead of appearing for court, defendant was trying to fake his own death and flee. His boat was found washed up on a small island. The Coast Guard searched for defendant. Suspecting foul play, authorities broadened their search. Defendant was eventually found by the United States Marshal's Service in Indiana with $30,000 in counterfeit money and a stolen vehicle. He was federally indicted in Indiana on counterfeiting charges, pleaded guilty, and served his sentence.

1

Andrews, South Carolina. The next day, Officer Christopher Geno swore out an affidavit seeking a search warrant for that residence. A state magistrate judge issued the warrant, which provided the following description of property to be seized:

> Oxycontin, other prescription medications and other equipment used to manufacture or process drugs for sale. Any monies that could be gained from the illegal sale of such items, any lock boxes, safes or compartments of any type that could hold such monies or drugs. Including the person of any and all persons found to be in the residence and any outbuildings and vehicles.

Warrant at 3. The magistrate authorized the warrant to be served within ten days. Id. On August 2, 2007, the OCB executed the search warrant and found 2.625 grams of oxycodone, various other prescription pills, several firearms (three shotguns, a rifle, and a pistol), and ammunition. The government agents executing the warrant knew that defendant had previously been convicted of a felony because they had run a criminal history check on defendant. The agents also knew it was a crime for a convicted felon to possess firearms and ammunition.

## II. DISCUSSION

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The requirement that the warrant describe with particularity the items to be seized ensures that persons are not subjected to "a general, exploratory rummaging in [their] belongings." Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). In reviewing the validity of a search warrant, the relevant inquiry is whether, under the totality of the circumstances, the magistrate had a substantial basis for concluding that there was

probable cause to issue the warrant. Illinois v. Gates, 462 U.S. 213, 238-39 (1983); see United States v. Chandia, 514 F.3d 365, 373-74 (4th Cir. 2008) (noting that magistrate's probable cause determination is entitled to "great deference"). "When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). The magistrate reviewing the warrant application is required "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. The crucial element in determining whether a search warrant is supported by probable cause is "whether it is reasonable to believe that the items to be seized will be found in the place to be searched." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993).

Defendant has moved to suppress the evidence seized at his residence, arguing that the warrant was invalid because it contained errors regarding the description of the premises to be searched, the warrant was not sufficiently specific, and the affidavit did not adequately establish the reliability of the confidential informant. The court will address each of these arguments in turn.

> The warrant contains the following description of the premises to be searched:
>
> Traveling south from Georgetown on Hwy 17, turn right onto Hwy 521. Travel west on Hwy 521 for approximately 12.0 miles and turn right onto Kent Rd. Continue down Kent Rd. approximately 3.0 miles and turn right onto Gapway Rd. Once on Gapway Rd., travel approximately 0.5 miles to 9221 Gapway Rd. 9221 Gapway Rd. is located on the right side of the road and is described as a tan in color, single wide mobile home with brown trim

> and a covered front porch. *This is the residence of Julius B. Nesbitt.* There are several junk vehicles in the yards. Any out buildings and or vehicles on the property.

Warrant at 3 (emphasis added). Defendant contends this is misleading because he does not own the trailer or the land. This argument lacks merit for two reasons. First, it is demonstrably false insofar as who the owner of record was as of the date of the search. The government has submitted titles to real estate, attached as exhibits to its motion, that show that property records indicate that defendant owned the real estate on the day the search was executed. Though defendant apparently conveyed the property to his sister on July 13, 2007, about three weeks before the search, that transaction was not recorded until August 21, 2007; thus, anyone searching the county property records before the search would have found defendant as the owner of record. Moreover, after defendant's arrest, he agreed to submit a proffer, in which he admitted that he conveyed the property to his sister after the warrant was executed and then back-dated the document. Though statements given under a proffer agreement normally cannot be used against a defendant, this agreement specifically provides that defendant's statement can be used "to rebut any evidence or arguments offered by or on behalf of" defendant. Proffer Agreement at 2. Defendant's argument also fails for a second reason—his ownership of the real estate is irrelevant.[2] Defendant does not dispute that he resided at the Gapway Rd. address. The law does not require legal ownership of property as a prerequisite to obtaining a valid warrant to search the property.

---

[2] Also irrelevant is defendant's assertion that the power company does not have the bill to the Gapway Rd. property in defendant's name. Defendant does not dispute that he resided at the Gapway Rd. address.

Defendant next argues that the search warrant is overly broad and ambiguous as to the places to be searched and the property to be seized. As to the drugs, the warrant, as recited above, was very specific. The police were authorized to look for Oxycontin or other prescription drugs. This was based on the confidential informant's controlled buy of Oxycontin the day before the warrant issued.

As to the firearms, defendant has a slightly better argument, but it still fails because seizure of the firearms is supported by the plain view exception to the warrant requirement. "[T]he plain-view doctrine authorizes warrantless seizures of incriminating evidence when (1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent." United States v. Jackson, 131 F.3d 1105, 1109 (4th Cir. 1997) (citing Horton v. California, 496 U.S. 128, 136-37 (1990); United States v. Williams, 41 F.3d 192, 196 (4th Cir. 1994)). "Not everything in plain view, however, may be seized—only those items that are perceived to be contraband, stolen property, or incriminating in character." Jackson, 131 F.3d at 1108.

The warrant does not mention firearms.[3] However, based upon a check of defendant's criminal record, the officers knew defendant was a convicted felon before executing the search warrant. They also knew it was a crime for a convicted felon to possess firearms. Thus, they knew any firearms in defendant's possession were being

---

[3] The officers likely could have sought to include firearms in the search warrant based on the controlled drug buy because of the "well-known and attested-to link between drug distribution and firearms." United States v. Perry, 560 F.3d 246, 251 (4th Cir. 2009); see United States v. Ward, 171 F.3d 188, 195 (4th Cir. 1999) ("Guns are tools of the drug trade and are commonly recognized articles of narcotics paraphernalia.").

possessed illegally. The officers were in defendant's residence searching for illegal prescription drugs pursuant to a valid search warrant. During the course of this search, and knowing that defendant was a convicted felon, the officers discovered firearms which they immediately knew were being possessed illegally. Because the officers were lawfully in defendant's residence pursuant to a search warrant and they immediately recognized the incriminating nature of the firearms, seizure of the firearms was proper pursuant to the plain view exception to the warrant requirement.[4]

Finally, defendant asserts that the affidavit is deficient because the officer failed to corroborate his assertion that the informant was reliable. The affidavit belies such a contention. "An important factor in determining whether an informant's report establishes probable cause is the degree to which it is corroborated." Lalor, 996 F.2d at

---

[4] Defendant generally argues that the requirements of Federal Rule of Criminal Procedure 41 (Search and Seizure) were not met in this case. Apparently, defendant is referring to Rule 41(e)(2)(A), which requires the warrant to command the officer to 1) execute the warrant within a specified time no longer than ten days, 2) execute the warrant during the daytime, and 3) return the warrant to the magistrate designated in the warrant. The problem with defendant's "argument is that the Fourth Amendment, not federal rules or state law, governs the admissibility of evidence obtained by state officers but ultimately used in a federal prosecution." United States v. Clyburn, 24 F.3d 613, 616 (4th Cir. 1994). "Rule 41 applies only to federal search warrants involving 'a federal law enforcement officer.'" Id. Moreover, even if the federal rule did apply, the warrant was in substantial compliance with its requirements. The warrant specified a ten day window for execution. Though the warrant did not direct the officers to execute it during the daytime, they in fact did so by executing the search at 0734 hours. "Daytime" is defined as 6:00 a.m. to 10:00 p.m. local time. Fed. R. Crim. P. 41(a)(2)(B). Finally, though the warrant did not instruct the officers to return it to the magistrate, they did in fact return the warrant the next day to the magistrate who issued it. Even if any of this could be construed as a violation of Rule 41, "suppression is not warranted as a remedy for such non-constitutional violations." United States v. Davis, 2009 WL 489998, at *2 (4th Cir. February 27, 2009) (citing United States v. Hurwitz, 459 F.3d 463, 472 & n.6 (4th Cir. 2006)).

1581. "Where an informant has proven to be reliable in the past and has first-hand knowledge of the criminal activity in question, then probable cause may exist for issuing a search warrant." United States v. Davis, 1992 WL 24214, at *2 (4th Cir. February 13, 1992) (citing United States v. Fleming, 566 F.2d 623, 625 (8th Cir. 1977)). In his affidavit, the officer averred that,

> Within the last seventy-two hours a confidential and reliable informant working under the direct control and supervision of the Georgetown County Organized Crime Bureau purchased a quantity of Oxycontin, a Schedule II controlled substance, from the above mentioned residence. The confidential informant has been used in the past and has proven to be reliable. The Organized Crime Bureau has received information and complaints about drug activity at this residence and has been conducting an investigation. It is my experience as a law enforcement officer that someone dealing illegal drugs will keep illegal drugs, materials connected to drugs and money derived from the sale of drugs at their residence.

Affidavit. Defendant's argument ignores the fact that the OCB used the confidential informant to make a controlled purchase of drugs at defendant's residence. In other words, this was not merely an anonymous tip. Moreover, the officer averred that the informant had "been used in the past and has proven to be reliable." Further corroboration exists in the form of "information and complaints of drug activity" at defendant's residence. The informant's first-hand knowledge of the drug activity at defendant's residence (via the controlled buy he conducted) plus the corroborating information supplied by the officer in his affidavit show that the informant was sufficiently reliable.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that defendant's motion to

suppress is **DENIED**.[5]

        **AND IT IS SO ORDERED.**[6]

                                                          _____
                                                          **DAVID C. NORTON**
                                                          **CHIEF UNITED STATES DISTRICT JUDGE**

**January 19, 2010**
**Charleston, South Carolina**

---

[5] The court has also considered defendant's motion to suppress (Dkt. No. 78) certain government exhibits filed in response to defendant's original motion to suppress. Finding no basis for exclusion of these exhibits, the court denies that motion as well.

[6] In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court of the United States defined the circumstances when a defendant can attack a facially sufficient affidavit. Under Franks, a defendant can obtain an evidentiary hearing on an affidavit's integrity by making "'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990) (quoting Franks, 438 U.S. at 155-56). The issue of a Franks hearing was raised, but not resolved, at the hearing on this motion. The court will address this issue if the appropriate motion is filed and defendant makes the required "substantial preliminary showing."

8