**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| JULIUS NESBITT, | ) | |
| | ) | No. 2:08-cr-01153-DCN |
| Petitioner, | ) | No. 2:14-cv-04503-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

      This matter is before the court on petitioner Julius Nesbitt's ("Nesbitt") motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255. ECF No. 285. The government filed a motion to dismiss, or in the alternative, for summary judgment. ECF No. 319. Nesbitt has also filed a number of related motions to which the government has not responded: (i) motion to expand the record, ECF No. 295; (ii) motion to amend the initial motion to vacate, set aside, or correct, ECF No. 299; (iii) motion to request District Court Judge to recuse himself, ECF No. 320; and (iv) motion to appoint counsel and schedule evidentiary hearing, ECF No. 331. For the reasons set forth below, the court: (i) grants in part and denies in part the government's motion to dismiss, or in the alternative, for summary judgment; (ii) denies in part Nesbitt's § 2255 petition as to all but one claim; and (iii) grants Nesbitt's motion to appoint counsel with respect to the sole remaining § 2255 claim.[1]

## I.  BACKGROUND

      Nesbitt was arrested in Indiana by the U.S. Marshals Service on January 8, 2008. Nesbitt was first indicted in the Southern District of Indiana on federal counterfeiting

---

[1]    The disposition of Nesbitt's other ancillary motions is also detailed below.

charges, to which Nesbitt pleaded guilty on August 21, 2008 and was sentenced to time

served in Indiana on February 26, 2009.  Following the Indiana indictment, on November

12, 2008, Nesbitt was named in a six-count indictment in the United States District Court

for the District of South Carolina.  Count 1 alleged violations of 21 U.S.C. §§ 841 and

846—Conspiracy to Possess with Intent to Distribute Oxycodone.  Counts 2 and 3

alleged a violation of 21 U.S.C. § 841—Possession with Intent to Distribute Oxycodone.

Count 4 alleged a violation of 18 U.S.C. § 924—Possession of a Firearm in Furtherance

of a Drug Trafficking Crime.  Count 5 alleged a violation of 18 U.S.C. §§ 922 and 924—

Possession of a Firearm by a Convicted Felon.  Count 6 alleged a violation of 14 U.S.C.

§ 88—False Distress Signal to U.S. Coast Guard.

   After Nesbitt's January 2008 arrest and before either indictment, defense counsel

and the government began negotiations in an effort to eventually resolve any potential

South Carolina charges alongside any charges filed in Indiana.  On March 14, 2008,

Nesbitt entered into a Proffer Agreement with the government, pursuant to which Nesbitt

agreed to provide the government with "fully truthful and forthright" information, and the

government agreed "that any self-incriminating statements made and other information

provided by [Nesbitt] during this Proffer" would not be used against him in any civil or

criminal proceedings or at sentencing, "unless there is a breach of this Agreement."  ECF

No. 167-2, Proffer Agreement 2–3.  The Proffer Agreement specifically states that the

government "does not agree to . . . enter into a plea agreement" with Nesbitt, and "[t]he

[g]overnment makes no representation about the likelihood that any such agreement will

be reached in connection with this Proffer."  Id. at 1.  The Proffer Agreement also

contained an integration clause and provided that it could not be modified except by a writing signed by all parties.  Id. at 3–4.

Nesbitt participated in two proffers, one on May 21, 2008 and the other on July 17, 2008.  During this period, Nesbitt's counsel and the government continued plea negotiations, but ultimately failed to reach any formal agreement.  See ECF No. 276, Resentencing Hr'g Tr. 29:6–22 (describing emails from government to Nesbitt's counsel indicating a plan to enter into plea agreement).  Nesbitt was eventually indicted in South Carolina, and on August 22, 2010, the government moved to hold Nesbitt in breach of the Proffer Agreement based on certain false statements and material omissions made during his May 21, 2008 proffer.  On August 25, 2010, the court found that Nesbitt breached his Proffer Agreement, and entered an order detailing this finding on September 14, 2010.  On August 26, 2010, after a four day jury trial, Nesbitt was convicted on Counts 1, 2, 3, 5, and 6 in the South Carolina indictment.

On November 30, 2010, Nesbitt was sentenced to 151 months imprisonment, followed by 36 months of supervised release.  On appeal, the Fourth Circuit affirmed Nesbitt's convictions, but vacated his sentence, finding that this court failed to provide a sufficient explanation for the sentence.  On remand, this court held a resentencing hearing, and on December 19, 2013, the court resentenced Nesbitt to 151 months imprisonment, followed by 36 months of supervised release.  Nesbitt again appealed, and the Fourth Circuit affirmed this court's resentencing on October 16, 2014.

Nesbitt filed a motion to vacate his sentence under 28 U.S.C. § 2255 on November 24, 2014.  He then filed a motion to expand the record on December 22, 2014, and a motion to amend his motion to vacate on January 5, 2015.  The government then

filed a motion to dismiss Nesbitt's motion to vacate on March 9, 2015, and Nesbitt filed a response to the government's motion on March 31, 2015. The same day, Nesbitt also filed a motion for the District Judge to recuse himself. On May 29, 2015, Nesbitt filed a motion to appoint counsel and schedule an evidentiary hearing in connection with his motion to vacate under § 2255. The government has not seen fit to respond to any of Nesbitt's numerous ancillary motions. These matters are now ripe for the court's review.

## II.  STANDARD OF REVIEW

Nesbitt filed the instant motions pro se. Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). Pro se petitions are therefore held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

Nesbitt proceeds under 28 U.S.C. § 2255, which provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

The government has filed a motion for summary judgment. Summary judgment shall be granted if the movant shows there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255.

### III.  DISCUSSION

Resolving the merits of Nesbitt's motion to vacate under § 2255 disposes of many of the issues presented in Nesbitt's numerous ancillary motions.  The court will begin by addressing Nesbitt's motion for the court to recuse, since granting this motion would relieve the court of the task of addressing any other issues.

### A.    Motion for Recusal

Nesbitt argues that recusal is proper under 28 U.S.C. § 455(a), which provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).  Nesbitt points to two prior rulings in this case, which he contends were so lacking in legal support and adverse to his interest that they would "cause a person with knowledge of the relevant facts reasonably to question the impartiality of this Judge and, in fact, believe in the Judge's actual bias against [him]."  ECF No. 320, Pet'r's Mot. to Recuse 4–5.  Specifically, Nesbitt contends that this court abused its discretion at a status conference following the resolution of Nesbitt's initial appeal by stating that it lacked jurisdiction to resentence Nesbitt until his petition for certiorari was resolved.  Id. at 2. Nesbitt further contends that this court ignored established Fourth Circuit precedent by denying his motion to correct the Amended Judgment where there was an alleged

discrepancy between the oral judgment and written judgment.  Id. at 4; see also ECF Nos. 311, 312 (Nesbitt's motion to amend/correct and this court's order denying that motion).[2]

Nesbitt's latter argument fails from the outset.  The Fourth Circuit affirmed this court's denial of Nesbitt's motion to correct the Amended Judgment in a July 1, 2015 opinion.  ECF Nos. 333, 338.  Thus, there is no indication that the court's denial of that motion was legally erroneous.

However, even assuming the court's rulings[3] were erroneous, they do not provide adequate grounds for recusal.  The Supreme Court has explained that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" under § 455(a). Liteky v. United States, 510 U.S. 540, 555 (1994).  This is because that section's concern with "partiality" is only implicated by "judicial predispositions that go beyond what is normal and acceptable."  Id. at 552.  A judicial predisposition may be inappropriate "either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . , or because it is excessive in degree . . . ."  Id. at 550.  Courts rulings, in and of themselves, "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required [] when no extrajudicial source is involved."  Id. at 555.

In this case, Nesbitt effectively contends that the court appears biased against him due to the fact that the court allegedly misapplied the law in a manner that is detrimental

---

[2]      Nesbitt appealed this court's denial of his initial motion to correct the Amended Judgment.  ECF No. 314.  While his appeal was pending, Nesbitt filed another motion requesting issuance of a corrected judgment and commitment order on June 1, 2015, which relied on the same arguments presented in his initial motion to correct the Amended Judgment.  ECF No. 332.  Nesbitt also filed a subsequent motion requesting an immediate ruling on the June 1, 2015 motion.  ECF No. 334.  The Fourth Circuit later affirmed this court's denial of Nesbitt's initial motion to correct the Amended Judgment.  ECF Nos. 333, 338.  In light of this affirmance, the court finds that Nesbitt's subsequent motions requesting issuance of a corrected judgment, ECF No. 332, and an immediate ruling on the issue must be denied.
[3]      The court notes that the decision to delay Nesbitt's resentencing occurred at a status conference, and was therefore never formalized in any order.

to his interests. Pt'r's Mot. to Recuse 4–5. Nesbitt points to nothing indicating that these adverse rulings were based on extrajudicial information. Nor do they reveal a "deep-seated and unequivocal antagonism that would render fair judgment impossible." Liteky, 510 U.S. at 556. To infer such antagonism from the allegation that the court's adverse ruling was in error would effectively require recusal every time a court made any decision. This result is absurd. The Supreme Court recognized as much in Liteky when it stated that judicial rulings are "[a]lmost invariably . . . proper grounds for appeal, not recusal." Id. at 555. Therefore, the court denies Nesbitt's motion for recusal.

### B.     Motion to Amend

Before turning to the merits of the case, the court also addresses Nesbitt's motion to amend his original motion to vacate under § 2255. ECF No. 299, Pet'r's Mot. to Amend. Nesbitt's motion to amend simply seeks to add three additional claims to his original motion to vacate. Because the government has not responded to this motion, the court will grant Nesbitt's motion to amend and will evaluate the additional claims described by that motion.

Having resolved these preliminary issues, the court now addresses Nesbitt's numerous claims for relief under § 2255.

### C.     Motion to Vacate Under § 2255 and Motion to Dismiss

#### 1.     Breach of Agreement to Send Information or Offer Plea

A large portion of Nesbitt's claims depend, in one way or another, on his contention that the government breached an oral agreement to send an Information to Indiana resolving his South Carolina charges in exchange for him signing the Proffer Agreement. See Attach. to Pet'r's Mot. 1–6. Two of Nesbitt's government misconduct

claims directly attack the legitimacy of the Proffer Agreement, arguing that it was induced by the government's promises under the alleged oral agreement, which were never fulfilled. Id. at 1–2. Nesbitt also argues that the court deprived him of due process by failing to hold an evidentiary hearing on his claim that the government breached the oral agreement. Id. at 1. Nesbitt further argues that his pretrial and trial counsel were inadequate for failing to challenge the use of information obtained through his proffer statement, and that his appellate counsel was inadequate for failing to challenge the court's rulings regarding the Proffer Agreement. Id. at 2–6.

"The interpretation of plea agreements is guided by contract law, and parties to the agreement should receive the benefit of their bargain." United States v. McQueen, 108 F.3d 64, 66 (4th Cir. 1997); United States v. Martin, 25 F.3d 211, 216–17 (4th Cir. 1994) ("Although plea agreements between the government and a defendant are unique and call for special due process considerations, the judicial interpretation of plea agreements is largely governed by the law of contracts."). This rule also applies to proffer agreements. See United States v. Pielago, 135 F.3d 703, 709 (11th Cir. 1998) ("The construction of proffer agreements, like plea agreements, is governed generally by the principles of contract law, as we have adapted it for the purposes of criminal law."). The court recognizes that the purported oral agreement in this case is alleged to be neither a plea agreement nor a proffer agreement, but an agreement to offer a plea agreement in exchange for the signing of a proffer agreement. Despite this distinction, the court sees no reason to depart from the general rule that such agreements are governed by the general principles of contract law.[4]

---

[4]    Indeed, it might be argued that because Nesbitt's only consideration in this purported agreement was his undertaking of the obligations in the Proffer Agreement, the alleged oral agreement is really a

"One of contract law's fundamental doctrines is that there can be no agreement unless there is a 'meeting of the minds.'" United States v. White, 628 F. App'x 848, 851–52 (4th Cir. 2015) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)). This "meeting of the minds" requires that the parties have mutually assented to the essential elements of the bargain. Id. at 852. "Where 'substantial confusion' calls into question whether there has been such a meeting of the minds over a plea bargain, there is no valid agreement to be enforced." Id.

Here, Nesbitt concedes there was no formal plea agreement, but argues there was an "oral agreement to send an Information to Indiana" in exchange for Nesbitt signing the Proffer Agreement. Resentencing Hr'g Tr. 32:5–7, 33:14–21;[5] see also Pet'r's Response 5 (disputing the government's characterization of his breach of agreement argument and stating that not all agreements are plea agreements). There is certainly no indication of any such agreement in the Proffer Agreement itself. Proffer Agreement 1–4. Nesbitt has identified excerpts from a series of emails sent by the government's counsel in an effort to show that the purported agreement existed. Resentencing Hr'g Tr. 29:4–22; ECF No. 249, Attach. to Objs. to Use of Existing Presentence Investigation Report During Resentencing 10–11. Nesbitt outlined this argument at his resentencing hearing:

> On May 14, 2008, [the government's counsel] stated: "I should be sending you an Information soon, which hopefully Nesbitt will be able to plead guilty to along with the counterfeiting charges up [in Indiana]." This agreement was made through my attorney in Indiana to me from [the

---

parole component of the Proffer Agreement. Under this interpretation, the integration clause of the Proffer Agreement is sufficient to dispose of any allegation that such an agreement was ever made. However, in the abundance of caution, the court has analyzed Nesbitt's claims as if he has alleged a truly distinct agreement.

[5] Nesbitt's motion to vacate and response to the government's motion to dismiss do not outline his arguments in any detail; instead they appear to refer to the discussion of the issue at his resentencing hearing. See Attach. to Pet'r's Mot. 1–6 (making bare assertions and at one point referencing issues raised "during the resentencing hearing"); Pet'r's Response 5 ("Petitioner has presented facts that prove there was an oral agreement made by the government.").

government's counsel] that if I signed the [Proffer][6] Agreement, this would happen.

Another e-mail from [the government's counsel] to [defense counsel].  On July 16, 2008. "I know it's been said before, but I am close to sending you the Information and Plea Agreement."  Before I signed the proffer and before I debriefed.

Another e-mail from [the government's counsel] to [defense counsel] July 29th, 2008. "My intention is not to wipe out any help he gets for his assistance in the Indiana case.  I don't have any objections at this time to the 5K reduction applying to my charges as well if possible."

Resentencing Hr'g Tr. 29:4–22.

However, these excerpts do not evince a final agreement created through "mutual assent" but rather show only preliminary discussions and the possibility of a future agreement.  The first email states that "hopefully Nesbitt will be able to plead guilty" to the charges in the forthcoming information, indicating that the plea was not a foregone conclusion.  The second email, which notably post-dates Nesbitt's first proffer interview, simply references the same information and clearly indicates that the plea agreement had yet to be offered, much less agreed upon by the parties.  Finally, the third email, which post-dates both of Nesbitt's proffer interviews, references a potential plea arrangement and states that the government has no "objections at this time," implying that the government retained the authority to decline such an agreement.

Nesbitt attempts to avoid this interpretation of the emails by arguing that the government never agreed to a particular plea arrangement, but simply agreed to offer a plea agreement.  However, the emails do not provide any indication that the plea negotiations were being conducted pursuant to some prior oral agreement, and they certainly do not suggest that the government was obligated to provide a plea offer by any

---

[6]     The transcript shows that Nesbitt referred to the "plea" agreement, however the court believes he most certainly meant the Proffer Agreement.

such agreement.  The emails simply reflect plea negotiations.  Evidence that plea

negotiations occurred cannot, in and of itself, constitute evidence that plea negotiations,

much less a plea offer, were <u>required</u> by some ancillary oral agreement.  The logic

underlying such a finding is simply not reasonable; the fact that a party takes some

action, or prepares to take some action, does not mean that such action was contractually

obligated.  To the extent the emails provide any indication of the forces motivating the

government's plea negotiations, they suggest that the government was guided only by its

own "intentions," not its obligations.  <u>Id.</u> at 29:19–20.  Therefore, the court finds that

Nesbitt has failed to present evidence of any alleged oral agreement.

Consequently, all of Nesbitt's proffer related claims in his motion to vacate must

fail.  Grounds Two A and Two B, which directly allege that the government failed to

fulfill its obligations under the oral agreement fail for lack of factual support as described

above.

Grounds Three B, Three E, and Three F all allege ineffective assistance of

counsel based on defense counsel's failure to challenge the indictment, trial evidence, and

sentencing guideline calculations, which were all based on information gained through

the Proffer Agreement.  Similarly, Ground Three G alleges that Nesbitt's appellate

counsel was inadequate for failing to challenge the court's rulings regarding the Proffer

Agreement and failure to conduct an evidentiary hearing on the issue.  Ineffective

assistance of counsel claims require the petitioner to "show that [his] attorney['s]

performance fell below an objective standard of reasonableness and that [he] suffered

prejudice as a result."  <u>United States v.</u> <u>Mikalajunas</u>, 186 F.3d 490, 493 (4th Cir. 1999)

(citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).  Because the court finds no

factual support for Nesbitt's contention that the Proffer Agreement was not involuntarily or unknowingly made, the court finds that any challenges to the indictment, trial evidence, guidelines calculations, or related court rulings relying on that contention would have failed.  Thus, Nesbitt cannot show that there is a reasonable probability that he was prejudiced by his counsel's failure to mount such attacks, and his counsel's decision to forego such a strategy was likely reasonable.

Ground One alleges that the court denied Nesbitt due process by failing to hold an evidentiary hearing to determine whether the proffer statement was knowingly and voluntarily given, and whether the information used to calculate the guidelines range was the result of the government's breach of agreement.  The Fourth Circuit "has never held that an evidentiary hearing is required to resolve disputed matters at sentencing.  Only when the reliability of evidence is an issue has [the Fourth Circuit] held that an evidentiary hearing is necessary."  United States v. Jackson, 155 F.3d 562 (4th Cir. 1998).  Even when the court does hold an evidentiary hearing to resolve sentencing issues, the hearing need not take any specific form.  See United States v. Reyna, 611 F. App'x 124, 126 (4th Cir. 2015) ("While 'the court must ensure that the parties have an adequate opportunity to present relevant information [on a disputed issue],' there is no affirmative requirement that the court allow live testimony." (quoting U.S. Sentencing Guidelines Manual § 6A1.3, cmt. (2013))).

Here, Nesbitt submitted objections outlining his arguments prior to the resentencing hearing, ECF No. 249, and took the opportunity to argue his position at the hearing itself.  Resentencing Hr'g Tr. 25:15–35:5.  In fact, the court accepted that the emails Nesbitt relied on were valid, but simply found them insufficient to support his

legal claim. Id. at 34:2–15. Thus, the court finds that Nesbitt had ample opportunity to present his arguments. Moreover, Nesbitt's allegation that the proffer statement was not knowing and voluntary does not turn on the reliability of the evidence, so no evidentiary hearing was necessary. Finally, the court accepted the legitimacy of the emails in finding that the proffer statement was knowing and voluntary. Id. at 34:6–12 (relying on dates of the emails to find no meeting of the minds). Thus, any error in not ordering an evidentiary hearing was harmless. United States v. Dutton, 92 F.3d 1183 (4th Cir. 1996) (finding that "any error regarding the denial of the continuance motion and failure to order a[n] [evidentiary] hearing was harmless and provides no basis for vacatur of the judgment," where defendant referred to polygraph evidence at sentencing hearing and the government did not dispute defendant's characterization of such evidence).

### 2.    Ineffective Assistance of Pretrial or Trial Counsel

Nesbitt also brings a number of other ineffective assistance claims relating to assorted pretrial issues. Specifically, Nesbitt contends that: (i) defense counsel was ineffective in plea negotiations, for advising him to enter into the aforementioned Proffer Agreement without conducting sufficient research or investigation into the evidence or charges against him—Ground Three A; (ii) defense counsel was ineffective in failing to understand and present an argument that Nesbitt was entitled to a Franks hearing— Ground Three B; and (iii) defense counsel was ineffective in failing to understand the Speedy Trial Act and argue Nesbitt's motion for violation of the Speedy Trial Act— Ground Three C. Attach. to Pet'r's Mot. 2–4.

As mentioned above, the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), announced a two-part test for determining whether a convicted person is

entitled to relief on the ground that his counsel rendered ineffective assistance. "To establish cause for [a] default based upon ineffective assistance of counsel, [petitioner] must show that [his] attorney['s] performance fell below an objective standard of reasonableness and that [he] suffered prejudice as a result." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999) (citing Strickland, 466 U.S. at 687). In making the determination of whether counsel's assistance was objectively reasonable, judicial scrutiny of counsel's performance must be highly deferential, and courts "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." Id. at 689–90.

To satisfy the second prong of the Strickland test, the petitioner must also show that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687–88. Under Strickland, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Glover v. United States, 531 U.S. 198 (2001). Thus, the "prejudice" inquiry focuses on the question of "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

With these principles in mind, the court addresses each of Nesbitt's pretrial ineffective assistance claims in turn.

### a.    Advice re:  Proffer Agreement

Ground Three A of Nesbitt's motion to vacate alleges that his pretrial counsel was ineffective in failing to conduct an appropriate investigation into the facts of his case before advising him to enter into the Proffer Agreement. To succeed on such a claim,

Nesbitt must show "that pre-trial counsel's advice with respect to the proffer agreement was outside the 'wide range of professionally competent' advice pre-trial counsel could have given." Collins v. United States, No. 1:10-cr-466, 2015 WL 631180, at *6 (D.S.C. Feb. 13, 2015).

In an affidavit submitted with the government's motion to dismiss, Nesbitt's pretrial counsel explained that because "Nesbitt's efforts to resolve the South Carolina charge took place prior to indictment for those charges, no formal discovery had been ordered." Resp't's Mot. Ex. 5. The affidavit further states that the events leading to the Proffer Agreement sprang from Nesbitt's desire to "offer[] assistance to law enforcement in South Carolina with a goal of mitigating against a potential sentence on the South Carolina charges and . . . obtaining a transfer of the South Carolina prosecution to Indiana." Id. Nesbitt's reply simply states that this affidavit confirms that his counsel failed to investigate his charges and the evidence against him prior to advising him to enter the Proffer Agreement. Pet'r's Reply 5–6. Nesbitt does not dispute, or even address, his counsel's explanation as to why no such investigation was made. Id.

When this context is taken into account, the court cannot say that pretrial counsel's advice regarding the proffer agreement was outside the wide range of professionally competent advice. As an initial matter, "attorneys have wide discretion in deciding to what extent, or in what manner, they will investigate a case." Johnstone v. United States, 1999 WL 672946, at *8 (E.D.N.Y. Aug. 25, 1999). Reasonableness, in the pretrial investigation context, "is based in large part on the petitioner's own statements and actions toward counsel." Id. Obtaining Nesbitt's proffer statement was "the first step" in pursuing the plea agreement he desired, Resentencing Hr'g Tr. 26:10–12, and

Nesbitt does not dispute that he wished to begin working towards a resolution of his South Carolina charges at the time in question.  Pet'r's Reply 5–6.  Given the uncontested affidavit evidence that it was Nesbitt who wished to offer assistance to the government before discovery was available, it was not unreasonable for his counsel not to conduct an investigation into the evidence and charges against him prior to his signing of the Proffer Agreement.  The evidence shows that pretrial counsel relied on Nesbitt's understanding of the case, as confirmed through discussions with the government.  Resp't's Mot. Ex. 5. The evidence further shows that pretrial counsel discussed the consequences of the Proffer Agreement with Nesbitt before it was signed.  Id.  Under the circumstances described above, the court finds these efforts sufficient.

### b.  **<u>Franks</u> Hearing**

Nesbitt next contends that his pretrial counsel failed to properly understand the requirements for obtaining a <u>Franks</u> hearing and failed to include such elements in Nesbitt's motion for such a hearing.  As this court previously explained in ruling on Nesbitt's motion for a <u>Franks</u> hearing, <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), outlines the circumstances in which a defendant can attach a facially sufficient affidavit underlying a warrant.  Under <u>Franks</u>, a defendant can obtain an evidentiary hearing on an affidavit's integrity by making "'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'"  <u>United States v. Colkley</u>, 899 F.2d 297, 300 (4th Cir. 1990) (quoting <u>Franks</u>, 438 U.S. at 155–56).  "The Court made clear that there is a 'presumption of validity' with respect to warrant affidavits and that to overcome that presumption, a defendant must allege 'deliberate falsehood' or 'reckless disregard for the

truth' and include with the allegations 'an offer of proof.'"  <u>United States v. Tate</u>, 524

F.3d 449, 454 (4th Cir. 2008) (quoting Franks, 438 U.S. at 171).  Allegations of

negligence or innocent mistake are not sufficient.  <u>Id.</u>  Instead, the defendant must point

out specifically the portion of the affidavit that he claims is false and give reasons why it

is false, and he must also furnish affidavits or their equivalent, or explain their absence.

<u>Id.</u>  "The burden of making the necessary showing is thus a heavy one to bear."  <u>Id.</u>

   Here, Nesbitt filed a motion for a <u>Franks</u> hearing in an attempt to invalidate the

affidavit of a Georgetown County Sheriff's officer, which provided probable cause for

the issuance of a search warrant.  ECF No. 86; ECF No. 91.  That affidavit stated that:

> [W]ithin the last seventy-two hours a confidential and reliable informant
> working under direct control and supervision of the Georgetown County
> Organized Crime Bureau purchased a quantity of Oxycontin, a Schedule II
> controlled substance from the above mentioned residence. The
> confidential informant has been used in the past and has proven to be
> reliable.

ECF No. 86 at 2.  Having reviewed Nesbitt's briefing of the <u>Franks</u> issue, the court finds

that his pretrial counsel had a sufficient understanding of the standard and made a

reasonable, if unsuccessful, attempt to meet it.  First, Nesbitt's briefs cited the proper

standard for when a hearing is required.  ECF No. 86 at 3.  Next, the briefs argued that

one central statement in the affidavit—that the informant had purchased a controlled

substance from the residence—was false.  ECF No. 91 at 1–2 (arguing that specific

portions of the audio file transcript showed that no purchase occurred during the recorded

encounter with Nesbitt).  The court recognized and addressed this argument in its order

denying Nesbitt's motion.  <u>See</u> <u>United States v. Nesbitt</u>, No. 2:08-cr-1153-DCN, 2010

WL 2219210, at *4 (D.S.C. May 28, 2010) ("Defendant also posits that the controlled

purchase that formed the primary basis for the warrant never occurred.").  The fact that

the court did not accept pretrial counsel's interpretation of the facts does not mean that pretrial counsel was ineffective.[7]  Moreover, Nesbitt fails to identify how the issue could have been better argued, or how counsel could have met the requisite showing for a Franks hearing.  Thus, the court cannot say that counsel's performance was deficient or prejudicial to Nesbitt.  The far more likely explanation for Nesbitt's failure to obtain a Franks hearing is that he was not entitled to one under the facts of the case.[8]  For these reasons Ground Three B of Nesbitt's motion must fail.

### c.    Speedy Trial Act

Nesbitt next argues that his pretrial counsel was ineffective in failing to understand the Speedy Trial Act and failing to act as an advocate for him on this issue. Specifically, Nesbitt contends that his counsel:  (i) untimely filed a Motion for Violation of the Speedy Trial Act which was written by Nesbitt and which counsel did not read before filing; (ii) claimed he would add to the motion, but never did; and (iii) proceeded to the hearing "completely unprepared."  Attach. to Pet'r's Mot. 4.  What Nesbitt fails to allege is how these deficiencies resulted in prejudice.[9]

---

[7]    The court also does not fault counsel for attempting to make a Franks argument out of the Georgetown County Sheriffs Office's failure to comply with its own procedures for controlled narcotics purchases.  Nesbitt, 2010 WL 2219210, at *4.  Though this argument had little chance of success, see id. (explaining that such an argument was not directly relevant and lacked evidentiary support), it may well have been the best available option.

[8]    The court also rejects Nesbitt's contention that he was somehow deprived of access to the court by his counsel's failure to obtain a Franks hearing.

[9]    The court notes that Nesbitt's counsel has provided an affidavit disputing some of these contentions and stating that his research led him to conclude that the Speedy Trial Act did not provide any relief.  The court also notes that the order denying Nesbitt's motion contradicts his current assessment of counsel's performance.  See United States v. Nesbitt, No. 2:08-cr-1153-DCN, 2010 WL 3522398, at *2 (D.S.C. Sept. 3, 2010) ("At the hearing on the instant motion, [Nesbitt]'s counsel expanded the previously briefed arguments by raising the issuance of a bench warrant and a writ of habeas corpus ad prosequendum that directed [Nesbitt]'s appearance for arraignment in Charleston on November 25, 2008. Counsel also raised the issue of gaps in the plea negotiations that took place in Indiana.").  However, for the purposes of this motion, the court will take Nesbitt's allegations to be true.

To date, the only arguments Nesbitt has provided for why he is entitled to relief under the Speedy Trial Act were set forth in his initial motion. ECF No. 77. The court squarely rejected these arguments, noting that the issue was governed by the plain language of the statute. Nesbitt, 2010 WL 3522398, at *3. This decision was affirmed by the Court of Appeals. United States v. Nesbitt, 464 F. App'x 89, 90–91 (4th Cir. 2012). Nesbitt has provided no reason to believe that counsel's efforts could have changed this outcome. As such, Nesbitt's has failed to demonstrate that there was a reasonable probability that a different course of action would have affected the outcome, and Ground Three C of his motion to vacate must fail.

### 3.    Ineffective Assistance of Appellate Counsel

Nesbitt also brings a host of ineffective assistance of counsel claims regarding his appellate counsel. Specifically, Nesbitt complains of his appellate counsel's failure to: (i) raise various issues on appeal—Ground Three G; (ii) file a petition for rehearing or rehearing en banc within fourteen days of the denial of his appeal—Ground H; (iii) order transcripts of opening and closing arguments—Ground Three I; and (iv) explain the procedures for filing a petition for a writ of certiorari—Ground Three J. Attach. To Pet'r's Mot. 6–7; Pet'r's Mot. to Amend. 2–4.[10] Again, the court addresses each claim in turn.

### a.    Failure to Raise Issues on Appeal

Nesbitt outlines seven possible grounds for appeal of his resentencing which he contends should have been raised by his appellate counsel. Attach. Pet'r's Mot. 6–7.

---

[10]    Nesbitt' clarified the labelling of each claim in his response to the government's motion to dismiss. Pet'r's Response 14–15.

Nesbitt describes the following three questions as "meritorious" issues which he asked his appellate counsel to raise on appeal:

(1) Did the District Court's failure to permit adversarial testing of the sentencing facts violate due process or USCS § 3553(a)?

(2) Should the District Court have conducted an evidentiary proceeding before admitting evidence obtained by unconstitutional means into the sentencing calculus?

(3) Did the District Court's failure to conduct a de novo resentencing violate due process of law?

Id. at 6. Nesbitt also identifies four other appealable issues, but does not describe them as meritorious or even explicitly state that they should have been raised on appeal. Id. at 6–7. Instead, Nesbitt simply notes that were properly preserved. Id. Presumably, however, Nesbitt intends to argue that such issues should also have been raised on appeal. Such issues are as follows:

(1) Did the District Court err in overruling Defendant's objection to information in the presentence investigation report obtained through a constitutionally invalid search warrant being used to calculate Guidelines Range?

(2) Did the District Court err in ruling there was no meeting of the minds in the oral agreement between the government and Defendant?

(3) Did the District Court err in overruling Defendant's objection to use of information in DEA agent's DEA-6 Form being used in calculating Guidelines Range when DEA agent made misrepresentations to the Court and deliberately destroyed critical evidence?

(4) Did the District Court err in ruling that Defendant's Counsel during plea negotiations was possibly ineffective and this issue would have to be presented in a 2255 action in Indiana?

Id. at 6–7.

At the outset, the court notes that counsel is under no obligation to "raise every 'colorable' claim suggested by a client." Jones v. Barnes, 463 U.S. 745, 754 (1983). In

assessing a claim that appellate counsel was ineffective for failing to pursue an issue on appeal, "reviewing courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'"  Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'"  Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (quoting Smith v. Robbins, 528 U.S. 259, 286 (2000)).  "To establish prejudice relating to the actions of appellate counsel, [a petitioner] must establish a reasonable probability that, but for his counsel's unreasonable failure to include a particular issue on appeal, he would have prevailed on his appeal."  United States v. Johnson, No. 3:12-cr-850, 2015 WL 6437097, at *2 (D.S.C. Oct. 22, 2015).

Turning to Nesbitt's proposed "meritorious" arguments, Nesbitt's first contends that his counsel should have appealed the court's failure to permit adversarial testing of the sentencing facts.  This allegation goes to the procedural reasonableness of Nesbitt's sentencing.  See United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009) (explaining that the Court of Appeals evaluates a sentence for abuse of discretion by first looking to its procedural reasonableness, and if the sentence is found procedurally reasonable, assessing whether it was substantively reasonable).  For a sentence to be procedurally reasonable, the sentencing court must, among other things "consider[] the 18 U.S.C. § 3553(a) factors and analyze[] the arguments presented by the parties."  United States v. Yooho Weon, 722 F.3d 583, 588 (4th Cir. 2013); see also Rita v. United States, 551 U.S. 338 (2007) ("[T]he sentencing judge should set forth enough to satisfy the appellate court

that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.").

Nesbitt fails to identify any way in which he was prevented from challenging the factors used to determine his sentence. The transcript of the resentencing hearing is replete with such challenges. See Resentencing Hr'g Tr. 10–20 (arguing against presentencing report's use of drugs and firearms obtained through search of Nesbitt's home); Resentencing Hr'g Tr. 21–25 (challenging statement in presentence report that other individuals' proffer statements corroborated information in Nesbitt's proffer statement); Resentencing Hr'g Tr. 25–35 (arguing against presentence report's use of information obtained through Proffer Agreement); Resentencing Hr'g Tr. 35–83 (arguing against and taking testimony on accuracy drug weights contained in presentence report). Not only did the court hear Nesbitt's objections to the presentence report, it explained why Nesbitt's objections were overruled, and in one instance, sustained his objection. See id. at 87:4–9 (sustaining objection regarding presentence report assessment of financial condition). Therefore, the court finds that Nesbitt's appellate counsel was not ineffective for failing to raise the "adversarial testing" issue on appeal because it was groundless. For the same reason, the court finds that Nesbitt has failed to demonstrate, or even allege, how he was prejudiced by this failure.

Nesbitt's second argument, that appellate counsel unreasonably failed to challenge the court's refusal to hold an evidentiary hearing regarding unconstitutionally obtained evidence, is also defective. First, the court notes that it is not entirely clear what evidence Nesbitt is referencing. To the extent this argument relates to Nesbitt's challenge

to the use of information obtained through the Proffer Agreement, it is unfounded for the reasons discussed in section III.C.1 above.

If the argument relates to the dispute regarding the drugs and firearms obtained through a search of Nesbitt's home, the court finds that the issue was given sufficient treatment at the hearing.  See Resentencing Hr'g Tr. 10–20.  That dispute was largely duplicative of the Franks issue discussed above in section III.C.2.b.  Nesbitt argued that the officer who provided the affidavit at issue in the pretrial Franks motion later testified at trial that he had not personally witnessed the drug exchange described in the affidavit, and that this testimony somehow changed the Franks analysis.  Id.  Again, the court notes that an evidentiary hearing is only appropriate when the reliability of evidence is at issue. Jackson, 155 F.3d 562.

Here, the court simply found that the issue had already been resolved and could not be re-litigated at the sentencing stage.  Even if the court was obligated to revisit the issue, there is no reason to think that the inquiry required an evidentiary hearing, as the government did not dispute the reliability of the officer's testimony—in other words, no one questioned the validity of Nesbitt's evidence, just the conclusions he drew from it. Id. at 14:1–15:18 (government arguing that the officer need not personally witness the transaction to provide affidavit).  Thus, there would have been no use in holding an evidentiary hearing, and such a hearing would not have aided Nesbitt's argument.

Finally, to the extent this argument is somehow meant to address other purportedly unconstitutionally obtained evidence, the court finds that Nesbitt has simply failed to identify such evidence, and consequently failed to state a viable claim for relief. For these reasons, Nesbitt's second argument fails.

In his third "meritorious" argument, Nesbitt contends that his appellate counsel should have argued that the district court deprived him of due process by failing to hold a de novo resentencing.  Again, Nesbitt provides no indication for why this argument would have been meritorious on appeal.  The rule in the Fourth Circuit is that a district court must revisit such issues on remand as are necessary to address the error that was the cause for remand, but may decline to revisit other issues.  United States v. Susi, 674 F.3d 278, 286 (4th Cir. 2012) ("[A] district court would be well within its authority to decline to revisit every sentencing issue on remand, unless the mandate indicates otherwise or the interrelationship of sentencing components makes it advisable to do so.  There is no reason to require a district court to plow through the same arguments, take the same evidence, and make the same findings that it has already made in the original sentencing where such an effort would serve no purpose.").  At the resentencing hearing, the court stated that it would not revisit issues unrelated to the Fourth Circuit's reason for remand, but it would allow Nesbitt to present his objections and make a record for possible appeal.  Resentencing Hr'g Tr. 9:7–18.  Thus, it appears any appeal raising this issue would have been fruitless.[11]  Moreover, even if Nesbitt were entitled to a de novo rehearing of all issues, Nesbitt completely fails to identify how he would have successfully reargued any such issue and how this would have affected his sentence.[12] Thus, Nesbitt has failed to defeat the presumption that his counsel performed reasonably,

---

[11]    Given that Nesbitt has failed to present any new arguments for why the court was incorrect when it reached this conclusion at the resentencing hearing, it should come as no surprise that the court reaches the same conclusion now.

[12]    The court notes that over the course of the hearing, it offered substantive reasons for overruling each objection Nesbitt presented.  Thus, it is not entirely clear that the court even denied Nesbitt the de novo resentencing hearing he requested.  In any event, Nesbitt has failed to convince the court that any of these rulings were in error, or would have affected Nesbitt's sentence.

and cannot demonstrate that he was prejudiced by his counsel's failure to raise this issue on appeal. Therefore, his third argument must fail.

As for the remaining issues that did not garner Nesbitt's "meritorious" designation, the court first notes that because Nesbitt did not even request that these issues be raised on appeal and apparently views them as something less than "meritorious," the court finds it quite doubtful that they could ever form the basis of an inadequate assistance claim. Nevertheless, the court addresses each argument in turn.

Nesbitt's first "non-meritorious issue" again relates to the Franks issue and the constitutionality of the search warrant used to search his home was valid. Nesbitt now contends his appellate counsel should have directly challenged the district court's use of information obtained from the search in calculating his sentence. The court notes that Nesbitt has not presented any argument as to why the court was required to even address this issue at the sentencing stage, given that it had already been decided before trial and affirmed by the Court of Appeals. Nevertheless, Nesbitt's basic challenge at the resentencing hearing was as follows: because the officer has testified that he lacked personal knowledge of the drug transaction discussed in the affidavit, the affidavit contained a false statement to the extent it implied the officer had personal knowledge of the drug transaction. Resentencing Hr'g 13:12–24.

However, the affidavit did not actually say that the officer had personal knowledge; any such interpretation of the affidavit necessarily relies on conjecture and implication. While leaving this issue open to interpretation may have been negligent, "[m]ere negligence in not fully identifying [the source of information] is inadequate to justify a Franks hearing." United States v. Washington, 139 F. App'x 479, 481 (4th Cir.

2005).  Indeed, the <u>Washington</u> court denied a <u>Franks</u> hearing under analogous, but more severe circumstances, where the affiant actually checked a box indicating that the affidavit was made on personal knowledge.  <u>See</u> <u>id.</u> ("Although Detective Lewis failed to properly identify Nykeia as the source of the other occurrences surrounding the confrontation with Washington, that failure does not rise to the level of reckless disregard for the truth.").  The court finds no reason to believe this reasoning would not have defeated Nesbitt's argument on appeal.

Nesbitt also argued that language in the affidavit describing the informant as "reliable" was misleading because the informant had only been used twice and had not procured drugs in either instance.  <u>Id.</u> at 17:9–21.  However, this argument presupposes that an informant must successfully secure drugs before he or she can be considered credible.  The court finds no support for this requirement in the law.  Therefore, the court finds that pursuit of this <u>Franks</u> issue would have provided Nesbitt no relief.  As such, Nesbitt has failed to demonstrate that his counsel's performance was objectively unreasonable or prejudicial.

Nesbitt's next proposed appellate argument challenges the court's finding that the alleged oral agreement did not exist because there was no meeting of the minds.  This argument has been sufficiently discussed above in section III.C.1 and fails for all the reasons stated therein.

Nesbitt also argues that his appellate counsel should have challenged the use of drug amounts listed in a Drug Enforcement Administration ("DEA") agent's DEA-6 form in calculating his sentencing range.  Pursuant to the Proffer Agreement, DEA Agent Adam Roberson interviewed Nesbitt regarding his drug activities and summarized his

interview notes in a "DEA-6" form.  Nesbitt argued at the resentencing hearing that because the agent destroyed his interview notes, in contravention of DEA policy, the DEA-6 form was unreliable.  Resentencing Hr'g Tr. 55:25–56:3.

This is simply a factual dispute over the agent's credibility.  The Court of Appeals reviews a district court's factual findings for clear error and gives great deference to credibility determinations.  United States v. Layton, 564 F.3d 330, 334 (4th Cir. 2009). The court heard very thorough arguments on this issue, with the DEA agent and Nesbitt even taking the stand.  Resentencing Hr'g Tr. 35–83.  The court believes that, to the extent it credited the DEA agent's testimony and the DEA-6 form, it acted well within its range of discretion.  Moreover, the court eventually found that even if the alleged disparities between what Nesbitt said during his proffer and the amounts listed in the DEA-6 form were taken to be true, it would not change the calculation of his guideline range.  Id. at 82:7–17.  Tellingly, Nesbitt does not challenge this determination, and though Nesbitt now claims that the amounts he stated during his interview were themselves exaggerations, the court clearly credited his proffer statements over his more recent attempt to recant.  Thus, the court cannot see how this challenge to the DEA-6 form would have impacted his sentence.  For these reasons the court cannot find that appellate counsel's decision to forgo this argument on appeal was either objectively unreasonable or prejudicial to Nesbitt.  As such, Nesbitt's third argument must fail.

Lastly, Nesbitt argues that his attorney should have challenged the court's ruling that his ineffective assistance claim against his pretrial counsel must be presented in a § 2255 action, rather than at sentencing.  "[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than

on direct appeal, unless the record conclusively shows ineffective assistance.'" <u>United States v. King</u>, 119 F.3d 290, 295 (4th Cir. 1997) (quoting <u>United States v. Williams</u>, 977 F.2d 866, 871 (4th Cir.1992). This rule certainly suggests that ineffective assistance claims are also inappropriate at sentencing, <u>before</u> a direct appeal, when the record is even less developed. In any event, the merits of the underlying ineffective assistance claim were addressed above in section III.C.2.a, which concluded that such a claim was meritless. Therefore, even if ineffective assistance claims could be brought at sentencing, the court finds that it would have been useless to appeal on such grounds, as raising this issue on appeal would have only brought about the court's inevitable rejection of the underlying ineffective assistance claim. Thus, this derivative ineffective assistance claim against Nesbitt's appellate counsel for failing to pursue an opportunity to bring an ineffective assistance claim against his trial counsel must fail.

### b.    Failure to Request Rehearing

Nesbitt next argues that appellate counsel was ineffective in refusing his request to file petition for rehearing or rehearing en banc. Attach. To Pet'r's Mot. 7. In an affidavit submitted with the government's motion to dismiss, Nesbitt's appellate counsel explains that he refused Nesbitt's request because he did not believe any ground for rehearing applied to Nesbitt's case. ECF 319-3. Nesbitt, of course, believes that he had sufficient grounds for a rehearing, and that resolving this disagreement on the legal merits of his proposed petition requires an evidentiary hearing.

First, the court notes that even if it were inclined to resolve this disagreement, an evidentiary hearing would be inappropriate as the disagreement concerns an issue of law, not fact. Moreover, Nesbitt has entirely failed to outline any legal argument for why his

proposed petition would have been granted.  Thus, the court has no way to evaluate how Nesbitt was prejudiced.  Nesbitt's assurances that his petition would have been viable are conclusory, and thus, insufficient to state a claim of ineffective assistance.

Most importantly, even if the court were to find that Nesbitt's could have presented a viable petition for rehearing, the court would nevertheless find Nesbitt's ineffective assistance claim defective.  "[A] petition for rehearing or rehearing en banc is a discretionary appeal and thus there is no constitutional right to counsel to pursue a petition for rehearing."  Smith v. United States, 2013 WL 1962311, at *3 (E.D.N.C. May 10, 2013) (quoting White v. United States, 2013 WL 1497579, at *3 (W.D. Va. Apr. 11, 2013)).  "[W]here no Sixth Amendment right to counsel attaches to the proceeding, an ineffective assistance claim cannot be sustained." Id. (quoting United States v. MacDonald, 966 F.2d 854, 859 n. 9 (4th Cir.1992)).  Thus, Nesbitt's claim fails as a matter of law.

### c.    Failure to Order Transcripts form Opening Statements and Closing Arguments

Nesbitt next contends that his appellate counsel was ineffective in failing to order transcripts of the opening statements and closing arguments made at his trial, and thus, failed to review the entire record before filing an Anders brief on his behalf.[13]  Pet'r's Mot. Amend 2–3.  Assuming this conduct was objectively unreasonable under Strickland, Nesbitt nevertheless fails to allege that he was prejudiced by his counsel's failure to

---

[13]    Nesbitt also contends that his counsel's failure to order the transcript somehow prevented the Court of Appeals from reviewing the entire record.  This allegation is clearly false as to the closing arguments.  On October 5, 2011, the Court of Appeals issued an order directing preparation of the transcript of the closing arguments held by this court on August 25, 2010 so that it could be reviewed in connection with Nesbitt's appeal.  ECF No. 235.

The court does note that the opening statements and opening charge appear to be missing from the transcript, but does not find that this omission alters its analysis.

review the opening and closing arguments.  Neither Nesbitt's motion to amend[14] nor his response to the government's motion to dismiss contain any indication of what issues might have been unearthed by a review of the opening and closing arguments, and Nesbitt has certainly failed to allege that there is a "reasonable probability" that appealing such issues would have produced a different result.[15]

Nesbitt's ineffective assistance argument might be read to reference a separate "government misconduct" claim in his motion to amend, wherein he contends that the government deprived him of a fair and impartial verdict by utilizing "charts and diagrams" during closing arguments which were not in evidence.  Id. at 1–2.  On this reading, Nesbitt basically argues that if his appellate counsel had reviewed the entire record, Nesbitt would have been able to appeal the use of these extra-evidentiary materials and overturn his conviction.  However, this theory also fails, as it is not "reasonably probable" that the Court of Appeals would have found error in the government's use of such materials.

"The use of summary charts, diagrams, and other visual aids is generally permissible in the sound discretion of the trial court, especially when used to organize complex testimony or transactions for the jury."  United States v. Pineda, 91 F.3d 136 (4th Cir. 1996) (quoting United States v. Crockett, 49 F.3d 1357, 1360–61 (8th Cir.1995)).  Here, the record reflects that the government used charts during its closing

_____

[14]     This particular argument comes from Nesbitt's motion to amend his motion to vacate under § 2255, not the original motion to vacate.  ECF No. 299.

[15]     It might be argued that Nesbitt's ineffective assistance claim alleges an outright failure to provide representation—i.e. abandonment, rather than a simple "ineffective assistance."  In abandonment cases, a petitioner need not make any showing of prejudice, because "the presumption that counsel's assistance is essential requires [the court] to conclude that a trial is unfair if the accused is denied counsel at a critical stage."  Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000).  However, the court has been unable to find any prior case law holding that a failure to examine portions of the trial record constitutes outright abandonment.  As such, the court is unable to relieve Nesbitt of the prejudice requirement in connection with this claim.

arguments to outline the legal significance of various pieces of evidence presented during the trial. ECF No. 234, Trial Tr. 8:17–24 ("And we are going to refer to this chart . . . here is Mr. Nesbitt, clearly written in red[.] Here is our prescription holders. There is a link immediately by his own words, and by the words of the testimony of Cindy Powell, who said he would leave with 2, $3,000 and come back with handfuls, bags of pills, hundreds of pills, in her estimation."); Trial Tr. 11:12–14 ("So this arrow . . . goes both ways. Oxycodone coming this way. What's going back? Money. And that's really what this conspiracy, other than the Oxycodone, is all about, it's the money. It's the 2 to $3,000 three or four times a month, according to Ms. Powell, that Mr. Nesbitt was walking out with and then coming back with pills."); Trial Tr. 18:16–19 ("And I'm going to write the Cadillac up on this list, as well. I'll be talking about that, as well, because that comes into play and shows yet more support for what happened on July 26, 2007."). The court went on to instruct the jury that:

> ARGUMENTS AND STATEMENTS BY LAWYERS ARE NOT EVIDENCE. THE LAWYERS ARE NOT WITNESSES. WHAT THEY HAVE SAID IN THEIR OPENING STATEMENTS, CLOSING ARGUMENTS, AND AT OTHER TIMES IS INTENDED TO HELP YOU INTERPRET THE EVIDENCE, BUT IT IS NOT EVIDENCE. IF THE FACTS AS YOU REMEMBER THEM DIFFER FROM THE WAY THE LAWYERS HAVE STATED THEM, YOUR MEMORY OF THEM CONTROLS.

ECF No. 181, Jury Instructions at 2. The government even made this point itself during its closing arguments. Trial Tr. 4:9–13 ("What I'm going to do, as the Judge noted, is I'm going to try to summarize and highlight what the evidence shows in this case. And certainly, as the Judge will tell you what I say regarding the testimony or evidence, if it's different than what you remember, your memory controls."). Given the limited nature of these charts and diagrams and the accompanying jury instructions, the court finds that it

was not error to allow their use during closing arguments. For the same reasons, the

court also finds that any attempt to raise this issue on appeal would have likely been

fruitless, and therefore, Nesbitt again fails to demonstrate that his counsel's deficiencies

had an impact on the ultimate outcome. Thus, Nesbitt's ineffective assistance claim, and

the underlying government misconduct claim, must fail.[16]

### d.    Failure to Explain Procedures for Filing Writ of Certiorari

Nesbitt's last argument is that his counsel was ineffective for refusing to discuss

filing a petition for a writ of certiorari and moving to withdraw as counsel prior to the

deadline for filing such a petition. Pet'r's Mot. Amend 3–4. This argument was

presented in Nesbitt's January 5, 2015 motion to amend, which the government has not

addressed. The government's motion to dismiss did include an affidavit from Nesbitt's

relevant appellate counsel, but that affidavit only addressed allegations in Nesbitt's initial

motion to vacate under § 2255, not his motion to amend. As such, Nesbitt's allegations

remain effectively uncontested.

"If his client wishes to petition for certiorari of a judgment affirming a criminal

conviction, a court-appointed lawyer must represent him in filing the petition." United

States v. Masters, 976 F.2d 728 (4th Cir. 1992); see also United States v. Tejeda-

Ramirez, 380 F. App'x 252, 254 (4th Cir. 2010) (recognizing that appointed counsel has

duty to notify the defendant of the result of his appeal and of the right to seek

discretionary review from the Supreme Court). "Based on Fourth Circuit precedent, the

failure of an attorney to inform his client of the right to file a petition for writ of certiorari

and to file a petition if requested by his client constitutes ineffective assistance of counsel

---

[16]    The court finds this discussion sufficient to dispose of Nesbitt's claim of government misconduct under Ground Two C, and does not address it in a separate section.

under both prongs of <u>Strickland</u>." <u>Yolanda Patrice Moton, v. U.S.</u>, 2016 WL 1732736, at

*3 (E.D. Va. Apr. 28, 2016).

Nesbitt's motion to amend does not explicitly state that his appellate counsel

failed to inform him of his right to file a petition for a writ of certiorari, nor does he

explicitly state that he ever requested such a petition be filed. Nesbitt does state that his

appellate counsel "refused to discuss this issue" with him. While this allegation is

somewhat ambiguous, the court finds that, when read in the light most favorable to

Nesbitt, it sufficiently alleges that his appellate counsel either failed to inform him of his

right to file a petition, or possibly denied his request to file a petition. In either case, this

allegation, if proven, would sustain his ineffective assistance claim. Given that this

allegation remains uncontested, the court certainly cannot dismiss the claim, or grant the

government's motion for summary judgment. However, because the allegation remains

ambiguous, and until today, the claim was not formally incorporated into Nesbitt's

motion to vacate, the court finds it inappropriate to decide the issue at this time. Instead,

the court finds it better to allow the government an opportunity to respond and, if

necessary, hold an evidentiary hearing on the issue to determine the nature of appellate

counsel's "refusal" to discuss the issue.

### D.    Ancillary Motions

Having assessed the merits of Nesbitt's allegations, the court is now in a position

to dispose of the two remaining ancillary motions. First, Nesbitt moves to expand the

record pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings by requiring

his former counsel to answer interrogatories and furnish copies of their work product.

ECF No. 295. Rule 7 provides that "[i]f the petition is not dismissed, the judge may

direct the parties to expand the record by submitting additional materials relating to the petition." The language of the rule leaves the decision to expand the record in the court's hands. The court has already granted numerous motions to allow affidavits from Nesbitt's former counsel to address his ineffective assistance claims. ECF Nos. 300, 303, 304. Because the court finds the current record sufficient to dispose of the bulk of Nesbitt's § 2255 claims, the court finds no reason to expand the record on those issues. Notably, Nesbitt's motion to expand the record does not directly request information related to the remaining ineffective assistance claim, though it does request material from the appellate counsel in question.[17] Therefore, the court denies Nesbitt's motion to expand the record.[18]

Nesbitt's last motion requests that the court appoint counsel and schedule an evidentiary hearing on Nesbitt's motion to vacate under § 2255. Section 2255 provides that:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255; see also United States v. O'Quinn, 166 F. App'x 697, 698 (4th Cir. 2006) ("Unless it is clear from the record, as expanded, that the prisoner is not entitled to relief, § 2255 makes an evidentiary hearing mandatory.").

---

[17] The motion to amend, which sought to add that claim, was filed after the motion to expand the record.

[18] Nesbitt's motion might alternatively be read as a motion to compel discovery under Rule 6(a) of the Rules Governing § 2255 Proceedings, which provides: "A judge may, for good cause, authorize a party to conduct discovery." Rules Governing § 2255 Proceedings. Under this reading, the court would still deny Nesbitt's motion for lack of good cause. For the reasons described above, Nesbitt has failed to present viable claims on most of the issues raised by his motion. His lone surviving claim is best addressed through an evidentiary hearing.

As described above, the court finds the current record sufficient to dispose of all but one of Nesbitt's claims.[19]  Nevertheless, because the court also finds that Nesbitt has stated a viable ineffective assistance claim regarding his appellate counsel's failure to discuss or represent him in connection with a potential petition for a writ of certiorari, Nesbitt may be entitled to an evidentiary hearing on that issue.  Therefore, the court grants Nesbitt's motion to appoint counsel with respect to that claim—i.e., Ground Three J.

---

[19]     The court also notes that the failure to provide Nesbitt with a Roseboro order appears harmless in this case, as most of his claims were without merit even when his allegations were taken as true, and in any event, Nesbitt filed a response to the government's motion for summary judgment in which he displayed an awareness of the summary judgment standard.  See Caudell v. Waters, 915 F.2d 1564 (4th Cir. 1990) (finding no error in failure to provide Roseboro order where summary judgment appropriate even if petitioner's allegations were true); Magano v. Vassar, 848 F.2d 185 (4th Cir. 1988) (finding failure to provide Roseboro order harmless where "Magano filed a lengthy opposition to defendants' motion and, taking the statements contained in the opposition as true, we still find that the defendants were entitled to judgment.").

## IV.   CONCLUSION

Based on the foregoing, the court **DENIES** Nesbitt's motion for recusal, and **GRANTS** Nesbitt's motion to amend his § 2255 petition.

The court then **GRANTS** the government's motion to dismiss, or in alternative for summary judgment, and **DENIES** Nesbitt's § 2255 petition, as amended, with respect to all claims, except Nesbitt's claim that his appellate counsel was ineffective in failing to advise and represent him with respect to a potential petition for writ of certiorari.  The court also **GRANTS** Nesbitt's motion to appoint counsel.  The court appoints the Federal Public Defender's Office to represent Nesbitt in this matter.  The court **DENIES** Nesbitt's motion to expand the record.

The court also **DENIES** Nesbitt's motion requesting issuance of a corrected Judgment and Commitment, and **DENIES** Nesbitt's motion for an immediate ruling on that issue as moot.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 31, 2016**
**Charleston, South Carolina**

36